UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ELIZABETH A. HUOVINEN <br> (f/k/a Elizabeth Taylor), <br><br> Plaintiff, <br><br> v. <br><br> CITY OF WILMINGTON and <br> KENNETH BUKOWSKI, <br><br> Defendants. | ) <br> ) <br> ) <br> ) C.A. No. 07-362 SLR <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### FIRST AMENDED COMPLAINT

#### The Parties

1. Plaintiff Elizabeth A. Huovinen (formerly known as Elizabeth Taylor) is a citizen of, and resides in, the State of Delaware. At all times relevant to the claims in this action, plaintiff was employed as a firefighter with the Wilmington Fire Department ("WFD" or the "Department"), a department of defendant City of Wilmington.

2. Defendant City of Wilmington is a municipal entity organized under the laws of the State of Delaware.

3. Defendant Kenneth Bukowski is a resident of the State of Delaware and an employee of defendant City of Wilmington. At all times relevant to the claims in this action, defendant Bukowski was employed as a lieutenant with WFD.

#### Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as well as under 42 U.S.C. §2000e, and 42 U.S.C. §1983. Supplemental jurisdiction over the related state law claims asserted in this Complaint is based on 28 U.S.C. §1367.

5. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

1

## Background and Facts

6.	Plaintiff joined WFD as a firefighter in September 2002. Plaintiff is one of only six women in the Department.

7.	After her initial period of training at the Wilmington Fire Department Academy, plaintiff was assigned as a firefighter to Engine Station 5, Platoon B ("E5B"). As a "rookie" firefighter, plaintiff was assigned typical firefighter duties as well as additional assignments involving training on the various types of equipment. Plaintiff's original supervising officer was Lieutenant Trentham.

8.	During her first year as a firefighter, plaintiff, the only female firefighter in her platoon, became concerned that she was being treated differently from the male firefighters in her platoon. In particular, plaintiff was not given the same opportunities for training on the Department's equipment that was afforded to her male colleagues.

9.	During 2003, plaintiff discussed her lack of opportunities for training with Lt. Trentham, but nothing was done. Plaintiff also discussed with Lt. Trentham the fact that she had experienced overt acts of sexual harassment from certain firefighters within E5A. On one night, firefighter Pczcola entered plaintiff's sleeping area, an area that was delineated from the male area by only a curtain, pulled down his pants, and exposed and waggled his penis in front of plaintiff. Later that night, firefighter Pczcola repeated the incident.

10.	In September 2003, plaintiff sought a transfer to a "double house" or "double company" which is a fire station having both an engine company and a ladder company. These double houses were more desirable assignments within the Department because they provided more visibility to the Department's upper management and accompanying opportunities for professional advancement. On the application for transfer, plaintiff stated the reason as "lack of

2

training" which referred to her inability to obtain training on the Department's equipment to the same degree as her male colleagues.

11. When the Department learned that plaintiff sought a transfer, Battalion Chief Frances X. Gildea told plaintiff that he would not submit her application up the chain of command unless she deleted the reference to "lack of training." Plaintiff was told to resubmit the application with the reason for transfer listed as a desire for "cross-training" (with a ladder company), but the application was denied by Deputy Chief Kalinowski without a reason being stated.

12. After her transfer was denied, plaintiff wrote to the Department's then-Chief, James W. Ford, Jr., on or about January 6, 2004, concerning the disparate treatment she was experiencing. Chief Ford discussed the matter of plaintiff's disparate treatment with Deputy Chief Kalinowski who then spoke to the firefighters in small groups. The treatment of plaintiff did not change during this time period.

13. In mid-January 2004, plaintiff was transferred to Engine Station 6, platoon A ("E6A"). Plaintiff's supervising officer in E6A was Lt. Martin. During the time she served under Lt. Martin, in E6A, plaintiff noticed a distinct change in her treatment. Plaintiff was treated with respect by Lt. Martin, and she experienced the same opportunities for training and professional growth as her male colleagues. However, plaintiff continued to experience discriminatory and otherwise wrongful conduct on the part of other members of the Department.

14. During the fall of 2004, while Lt. Mazzio was serving as Acting Lieutenant, plaintiff discovered several male firefighters watching pornography on a television in the officers' quarters at the fire station. Such conduct was not only offensive to plaintiff as the only female firefighter present, but it constituted an express violation of the Departments rules and

regulations. Article 3.22 of the Rules and Regulations of the Wilmington Fire Department provide as follows:

> Pornographic materials (videos, magazines, films, etc.) are not permitted on fire department property. These materials are not limited to those items listed above. Class E violation.

15. Plaintiff registered a complaint about the pornography to Acting Lt. Mazzio, but he did nothing to stop the activity and he told plaintiff that she was being unreasonable.

16. Battalion Chief Huelsenbeck was called to the station and spoke to plaintiff about the situation. Battalion Chief Huelsenbeck told plaintiff that she should not make a complaint about the incident as she would be labeled a "troublemaker" and she might wind up being transferred. Battalion Chief Huelsenbeck ordered Lt. Mazzio to apologize to plaintiff, and plaintiff agreed not to file a formal complaint.

17. Immediately after the incident, plaintiff retired to her sleeping area, which was separated from the male sleeping area by only a couple of pieces of plywood and a shower curtain liner. Lt. Bukowski (then a firefighter, not yet a lieutenant), who had been viewing the pornography in the other room, entered plaintiff's sleeping area and jumped on the bed on top of her to simulate a sexual act. Plaintiff protested, and Lt. Bukowski laughed and left the area.

18. No action was taken against Lt. Bukowski for the above conduct even though his conduct violated Article 3.51 of the rules and regulations of the Department which provides, in pertinent part:

> 3:51 Sexual Harassment
>
> 1. Employee Related
>
>    Members of the department are prohibited from engaging in activity defined as Sexual Harassment. For the purpose of this rule, sexual harassment is defined as any unwelcome sexual

advances, requests for sexual favors or other verbal or physical contact of a sexual nature when:

A. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment.

...

C. Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

19. The conduct of Lt. Bukowski and the other male firefighters violated Article 3.51 in that plaintiff was placed in the uncomfortable and inappropriate position of being subjected to behavior that clearly violated the rules and regulations of the Department and which, by the very language of the rule itself, created an intimidating, hostile, and offensive work environment.

20. In January 2005, Lt. Scholl assumed command of E6A. Lt. Scholl, unlike his predecessor Lt. Martin, treated plaintiff in a demeaning and discriminatory manner. Plaintiff complained about this disparate treatment to Battalion Chief Brock who, plaintiff believes, told Lt. Scholl to cease his discriminatory conduct towards plaintiff. Such conduct did not abate, however, and plaintiff continued to be treated differently than her male colleagues.

21. In January 2006, Lt. Bukowski received a promotion from firefighter to lieutenant, and he was transferred to E6A to become supervising officer of plaintiff's platoon. Shortly before the promotion and transfer became effective, Lt. Bukowski approached plaintiff from behind, rubbed her shoulders, and said "I have to flirt with you now because I am about to become an officer." This contact was unwelcome, unprofessional, objectionable, and in violation of Article 3.52 of the Department's rules and regulations.

22. Shortly after assuming command, at a roll call when the entire platoon was present, Lt. Bukowski stated that there was "only one ass I want to look at in here" referring to plaintiff who was the only female in the platoon.

23. On or about January 20, 2006, plaintiff was participating in a training exercise involving a fire truck. In front of all the attending firefighters, Lt. Bukowski asked plaintiff a question about a particular evolution. Upon hearing her response, he told her she was incorrect and belittled her in front of her peers. In fact, plaintiff was correct, and Lt. Bukowski had confused the procedures for two pieces of equipment. Lt. Bukowski never apologized to plaintiff or acknowledged his error despite the fact that he had criticized her unjustly in front of her colleagues.

24. Lt. Bukowski criticized plaintiff for reporting for duty out of uniform on at least one occasion. Lt. Bukowski failed to take into consideration the fact that plaintiff was the only female firefighter on duty at that time, and she had to wait for ten male firefighters to dress before she could use the only locker room. To this day, the Department does not provide separate locker or changing rooms for female firefighters.

25. On or about March 9, 2006, plaintiff was driving a fire truck en route to a scene. Lt. Bukowski was present in the truck, and he was giving plaintiff orders as to the directions to follow to the fire scene. Plaintiff accidentally took a wrong turn and she was severely criticized by Lt. Bukowski for allegedly disregarding his instructions intentionally. Back at the station, Lt. Bukowski shouted at plaintiff in a loud and threatening voice in his office. Plaintiff left his office and went to the firefighters' locker room. Lt. Bukowski chased her and plaintiff entered the bathroom to escape from him. The bathroom door had no lock, and plaintiff held the door shut while Lt. Bukowski ranted at her from the locker room side of the door. A firefighter had to

physically place himself between Lt. Bukowski and the door to prevent Lt. Bukowski from entering the bathroom. Male firefighters who made similar errors were never criticized or treated in that hostile, threatening, physical, and inappropriate manner.

26. On May 16, 2006, as firefighters were about to board a truck to respond to a call, Lt. Bukowski grabbed plaintiff by her hair and pulled her backwards. Plaintiff objected, but Lt. Bukowski considered the incident to be mere "horseplay." Plaintiff has never seen Lt. Bukowski engage in such "horseplay" with any male firefighters in the Department.

27. Later on May 16, 2006, as plaintiff was driving the fire truck with Lt. Bukowski aboard as the officer in charge, plaintiff turned onto a particular street, as had been intended. Lt. Bukowski then screamed at plaintiff about the route she had taken. Once again, Lt. Bukowski accused plaintiff of deliberately ignoring his instructions even though he never issued explicit instructions for their route of travel. Moreover, Lt. Bukowski never acted in that manner towards male firefighters in similar situations.

28. Immediately following the discriminatory and harassing incidents on May 16, 2006, plaintiff sought a conference with Battalion Chief Huelsenbeck. In response to hearing plaintiff's report on Lt. Bukowski's improper conduct, Battalion Chief Huelsenbeck told plaintiff that she needed to "get a thicker skin" and that if she kept complaining, she would wind up being transferred to Station 3.

29. The hostile and discriminatory environment fostered by Lt. Bukowski did not abate after plaintiff's meeting with Battalion Chief Huelsenbeck. Accordingly, in June 2006, plaintiff, through counsel, wrote to the City's Director of Personnel, Monica Gonzalez-Gillespie, and asked for confirmation that the Department would not retaliate against plaintiff for her complaints. There was no response from the City Personnel Department or the Fire Department.

Moreover, the hostile environment and discriminatory conduct created by Lt. Bukowski continued.

30. On July 20, 2006, plaintiff through her counsel again wrote to Ms. Gonzalez-Gillespie about the matter. Once again, there was no response.

31. On August 2, 2006, without any prior notice or discussion, plaintiff was notified that she was being transferred from Fire Station 6 to Fire Station 5. Plaintiff lost her choice assignment at a "double house" due to her complaints about Lt. Bukowski's improper conduct. Lt. Bukowski was also transferred, but to another "double house," which was essentially a lateral move. By contrast, plaintiff was transferred to a "single house" that was on the periphery of the Department's activity.

32. In response to plaintiff's complaints that she was being subjected to retaliation, the Department responded that it was following its "policy" of separating individuals involved in charges of sexual harassment. Plaintiff has never seen any such policy in writing, and no specific rule or regulation has ever been disclosed to her as controlling the matter.

33. Plaintiff learned after her transfer to Fire Station 5 that another firefighter, Martina DeJesus-Tyson, had asserted claims of gender discrimination against Lt. Bukowski while they were at Fire Station 4. Lt. Bukowski was transferred once again, but unlike the situation involving plaintiff, Ms. DeJesus-Tyson was not transferred. That constitutes disparate and inconsistent treatment by the Department.

34. Plaintiff was told that her transfer to Station 5 constituted a "temporary duty" assignment during the investigation of the matter involving Lt. Bukowski. However, to the best of plaintiff's knowledge, the Department has no official status of "temporary duty." Moreover, to the best of plaintiff's knowledge, no formal investigation of Lt. Bukowski was conducted by

the Department or the City. Dept. Chief Kalinowski informed plaintiff that she was being temporarily reassigned due to the pending litigation (plaintiff had filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC").

35. In December 2006, plaintiff learned that she was being transferred yet again, as of January 2007, as part of the routine end-of-year transfers. Plaintiff was transferred back to Station 6, but to a different platoon. Plaintiff sought reassignment to her original Engine 6 assignment, but she was told by new-Chief Willie J. Patrick that it was decided that she needed a "strong officer" to serve above her, and that E6B would provide such a "strong officer." Chief Patrick also told plaintiff that Deputy Chief Kalinowski had made this decision for "operational reasons," and it was being accepted by the Department.

36. Plaintiff mentioned to Chief Patrick that her original platoon, E6D, was in need of an experienced emergency medical technician ("EMT"), who had Spanish language skills, and that she possessed both those qualifications. A transfer back to E6D would also have provided plaintiff with a schedule that meshed with that of her fiancee who was also a firefighter. The Department refused even though plaintiff was qualified for the vacant position and it would have benefited both the Department and her personally.

37. During early 2007, plaintiff learned that Lt. Bukowski was spreading a rumor that plaintiff's claims had been dropped or dismissed. That was not true as Lt. Bukowski was well aware. In addition, Lt. Bukowski spread other rumors throughout the Department accusing plaintiff of being a troublemaker. Lt. Bukowski's deliberate misrepresentations were intended to harm plaintiff's reputation within the Department and they served to exacerbate the hostile work environment she faced.

38. Plaintiff no longer serves under Lt. Bukowski during regular work hours, but she has been denied the opportunity to work overtime because the Department's procedure for overtime could cause her to be assigned to serve with or under Lt. Bukowski. Plaintiff submitted two requests to the Department, in writing, seeking assurance that she would not be assigned to work at the same station with Lt. Bukowski, but the Department has not responded. The Department's lack of action on this matter has resulted in economic loss to plaintiff through loss of opportunities to work overtime which is normal for firefighters.

39. At this time, plaintiff continues to serve as a firefighter with the Department. Plaintiff conducts herself according to the rules, regulations, and principles of the Department, and continues to serve the City. Like all firefighters, plaintiff risks her life every time she goes out on a call. Unlike other firefighters, however, plaintiff has been continually subjected to demeaning, discriminatory, and hostile conduct by Lt. Bukowski, an officer selected and delegated by the Department to lead firefighters in life-threatening activities. Defendants:

    (a) Created and subjected plaintiff to a hostile work environment based on her gender;

    (b) Failed to provide her with training and other opportunities based on her gender;

    (c) Subjected her to unjust criticism motivated and based on her gender;

    (d) Subjected her to, or tolerated, unwanted and inappropriate physical conduct of a sexual nature directed at her;

(e) Subjected her to transfers that were inappropriate and retaliatory, based on her complaints of inappropriate and illegal behavior on the part of other individuals in the Department;

(f) Failed to take reasonable and appropriate action against individuals within the Department who consistently engaged in illegal, discriminatory, and hostile conduct towards plaintiff;

(g) Failed to conduct a reasonable and appropriate investigation of the issues reported by plaintiff despite the existence of overwhelming corroborative evidence in the form of eyewitnesses to the illegal, discriminatory, and hostile conduct by members of the Department;

(h) Retaliated against plaintiff despite the fact that she was the victim of illegal, discriminatory, and hostile conduct by members of the Department;

(i) Failed to follow the rules and regulations established by the Department to handle matters reported by plaintiff;

(j) Failed to treat plaintiff in a fair and consistent manner under the rules and regulations of the Department and federal and state laws;

(j) Failed to take reasonable steps to ensure that plaintiff would not serve with or under Lt. Bukowski during overtime activities; and

(k) Through the Chief, Deputy Chief, and other senior members of the WFD, acting for the City of Wilmington, failed to take appropriate and reasonable action to remedy the illegal, harassing, and discriminatory conduct to which plaintiff was subjected.

<u>Requisites</u>

40. At all times relevant to the allegations in the complaint, the Wilmington Fire Department continuously engaged in an industry affecting commerce within the meaning of 42 *U.S.C.* §2000e(g) and (h).

41. Plaintiff has complied with all the requirements of 42 *U.S.C.* §2000e, *et seq*. and 19 *Del.C.* §710 *et seq*. for the filing of this legal action in that a charge of discrimination was filed with the Office of the Equal Employment Opportunity Commission ("EEOC") alleging that she had suffered discrimination and retaliation in violation of Title VII, 42 *U.S.C.* §2000e, *et seq* and19 *Del.C.* §710 *et seq*.

42. On or about January 23, 2007, the DDOL issued a decision holding that there was reasonable cause to believe that an unlawful employment practice occurred with respect to plaintiff's employment with Wachovia. The matter was then submitted to the EEOC for review. On or about March 27, 2007, the EEOC issued a "right to sue" notice to plaintiff.

COUNT 1
DISCRIMINATION
(<u>Title VII, 42 *U.S.C.* §2000e *et seq*. and 19 *Del.C.* §710 *et seq*.-
Claims against Defendant City of Wilmington</u>)

43. Plaintiff reasserts the allegations in paragraphs 1-42 above.

44. Defendant <u>City of Wilmington (hereinafter "City")</u> engaged in conduct and actions constituting discrimination against plaintiff based on her gender.

45. Defendant <u>City</u> created a hostile work environment through their wrongful and discriminatory conduct towards plaintiff.

46. Defendant City's wrongful and discriminatory conduct denied plaintiff the opportunity to continue working at a duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for plaintiff.

47. Defendants City's wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of her rights.

48. Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq.* and 19 *Del.C.* §710 *et seq.*, entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 2
## RETALIATION
(Title VII, 42 *U.S.C.* §2000e *et seq.* and 19 *Del.C.* §710 *et seq.* – *Defendant City of Wilmington*)

49. Plaintiff reasserts the allegations in paragraphs 1-48 above.

50. Plaintiff was denied the opportunity to continue working at a duty assignment in which would have fostered her professional growth and opportunities.

51. Defendant City retaliated against plaintiff for raising complaints about the harassing and discriminatory actions of Lt. Bukowski, and the hostile work environment her created and fostered.

52. Defendant City retaliated against plaintiff by transferring her from a suitable duty assignment while not doing so with respect to at least one other employee who also complained of harassment or discriminatory on the part of Lt. Bukowski.

53. Defendant City's wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of her rights.

13

54. Defendant City's wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq.* and 19 *Del.C.* §710 *et seq.*,

### COUNT 3
### (42 U.S.C. § 1983 – CLAIMS AGAINST DEFENDANT BUKOWSKI)

55. Plaintiff reasserts the allegations in paragraphs 1 – 54 above.

56. At all times Defendant Bukowski was acting under color of State law.

57. Defendant Bukowski engaged in conduct and actions which constitute discrimination against Plaintiff based on her gender.

58. Defendant Bukowski's wrongful and discriminatory conduct denied Plaintiff the opportunity to continue working at a duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for Plaintiff.

59. Defendant's wrongful actions and discriminatory conduct toward Plaintiff were intentional, malicious, and/or made with reckless disregard of her rights, all in violation of Plaintiff's right to equal protection of the laws and due process of law under the United States Constitution, entitling her damages pursuant to 42 U.S.C. § 1983.

60. The Defendant's wrongful actions and conduct toward Plaintiff were a proximate cause of Plaintiff's suffering, *inter alia*, past, present and future emotional and mental distress and loss of opportunity for overtime employment entitling Plaintiff to remedies and damages including, but not limited to, compensatory, equitable and punitive damages as set forth below.

### COUNT 4
### (42 U.S.C. § 1983 – CITY OF WILMINGTON)

61. Plaintiff reasserts the allegations in paragraphs 1-60 above.

62. Defendant City has engaged in conduct in actions constituting discrimination against Plaintiff based on her gender.

63. Defendant City's wrongful and discriminatory conduct denied Plaintiff the opportunity to continue working at a duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for Plaintiff.

64. Defendant City's wrongful actions against Plaintiff and conduct towards her were intentional, malicious, and/or made with reckless disregard to her rights, all in violation of the equal protection of the laws and due process of law under the United States Constitution, entitling her damages pursuant to 42 U.S.C. § 1983.

65. The actions of Defendant Bukowski which constituted harassment and discrimination of Plaintiff were ratified by the City.

66. The discriminatory actions and wrongful conduct directed towards Plaintiff were pursuant to a policy of the City as they were assented to and at the direction of City policymakers.

67. The discriminatory and unlawful actions directed against Plaintiff were caused by Defendant City's intentional and reckless failure to train and supervise its employees.

68. The Defendant's wrongful actions and conduct toward Plaintiff were a proximate cause of Plaintiff's suffering, *inter alia*, past, present and future emotional and mental distress and loss of opportunity for overtime employment entitling Plaintiff to remedies and damages including, but not limited to, compensatory, equitable and punitive damages as set forth below.

## COUNT 5
## STATE LAW CLAIM - *PRIMA FACIE* TORT

69. Plaintiff reasserts the allegations in paragraphs 1-68 above.

70. Defendants have committed *prima facie* tort by intentionally, maliciously, and without justification harming plaintiff by:

    (a)    Engaging in, or permitting the existence of, conduct of a discriminatory and harassing nature based on plaintiff's status as a female;

    (b)    Knowingly fabricating or manufacturing false reasons for her transfer to a different duty assignment;

    (c)    Engaging in employment practices and acts towards plaintiff based on her gender;

    (d)    Retaliating against plaintiff due to her reporting of the wrongful conduct against her;

    (e)    Wrongfully and adversely affecting plaintiff's career opportunities with the Department due to her status as a female.

71. Defendants' wrongful, intentional, and malicious actions against and conduct towards plaintiff, or their failure to act, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 6
### STATE LAW CLAIM - BATTERY

72. Plaintiff reasserts the allegations in paragraphs 1-71 above.

73. Defendant Bukowski knowingly and intentionally engaged in acts of physical contact with plaintiff while they were on duty including jumping on her bed and simulating a sexual act, grabbing her hair, and touching or rubbing her shoulders.

74. Defendant City of Wilmington is liable, under the doctrine of *respondeat superior* or other applicable principles of agency, for the wrongful conduct of defendant Bukowski as such conduct occurred while plaintiff and defendant Bukowski were on duty, and in spite of the fact that the City of Wilmington had been made aware of defendant Bukowski's conduct and actions and had taken insufficient or no steps to stop the conduct and prevent it from occurring in the future.

## COUNT 7
## STATE LAW CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiff reasserts the allegations in paragraphs 1-74 above.

76. Defendant Bukowski's conduct constituted intentional infliction of emotional distress in that he acted deliberately and in such a manner as to cause plaintiff to suffer emotional distress and mental anguish.

77. Defendant Bukowski engaged in a consistent pattern of harassing, discriminatory, and otherwise wrongful and inappropriate conduct, including inappropriate multiple acts of physical contact, directed expressly at plaintiff.

78. As a direct and proximate result of the intentionally wrongful conduct of defendant Bukowski, plaintiff suffered physical injuries and harm including irritable bowel syndrome and required medical care and psychological counseling, as well as loss of opportunity for overtime income.

THEREFORE, plaintiff demands that judgment be entered in her favor and against defendants, jointly and severally, as follows:

(1) Compensatory damages for past, present, and future emotional distress and psychological and physical harm, as well as lost overtime income;

(2) Punitive damages;

(3) Equitable relief in the form of reinstatement to her position with the platoon she with which she was serving;

(4) Costs of this action;

(5) Reasonable attorneys fees;

(6) Prejudgment and postjudgment interest at the applicable legal rate(s);

(7) Such other relief as the Court deems just and appropriate.

BIGGS AND BATTAGLIA

/s/ Steven F. Mones
Victor F. Battaglia, Sr. (Del. Bar #156)
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
Tel:  302-655-9677
Fax:  302-655-7924
smones@batlaw.com
Attorneys for Plaintiff

July 17, 2007