UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

ELIZABETH A. HUOVINEN          )
  (f/k/a Elizabeth Taylor),          )
                          )
             Plaintiff,          )          C.A. No. 07-362 (SLR)
                          )
          v.          )          JURY TRIAL DEMANDED
                          )
CITY OF WILMINGTON and          )
KENNETH BUKOWSKI,          )
                          )
          Defendants.          )

PLAINTIFF'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND ANSWER

BIGGS AND BATTAGLIA
Victor F. Battaglia, Sr. (Del. Bar #156)
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
Tel:  302-655-9677
Fax:  302-655-7924
smones@batlaw.com
Attorneys for Plaintiff

December 31, 2007

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. 3

 Nature and Stage of Proceedings ...................................................................... 4

Summary of Argument ........................................................................................ 5

Statement of Facts .............................................................................................. 6

Argument:
            DEFENDANTS' MOTION TO AMEND THEIR ANSWER
            SHOULD BE DENIED AS IT IS NOT BASED ON ANY
            NEW CLAIMS AND THERE IS NO GOOD CAUSE FOR
            SUCH AN AMENDMENT ............................................................................. 7

Conclusion ........................................................................................................... 10

<u>TABLE OF AUTHORITIES</u>

*Hall v. Operative Plasterers' and Cement Masons' Int'l Assoc. Local Union 143,*
188 F.Supp.2d 1013 (S.D. Ill. 2001)

<u>NATURE AND STAGE OF PROCEEDINGS</u>

On June 7, 2007, plaintiff Elizabeth Huovinen filed a complaint against defendants City of Wilmington (the "City") and Kenneth S. Bukowski (a Lieutenant in the Wilmington Fire Department) alleging discrimination, retaliation, *prima facie* tort, battery, and intentional infliction of emotional distress.  Complaint Counts 1-5 respectively.  Exhibit-1.

On July 17, 2007, prior to any responsive pleading having been filed by defendants, plaintiff filed an amended complaint adding claims under 42 U.S.C. §1983 against Lieutenant Bukowski and the City.   Amended Complaint Counts 3 and 4 (Exhibit-2).

On August 20, 2007, defendants filed an answer to the amended complaint.  Defendants raised 22 affirmative defenses, but did not raise the specific defense of failure to exhaust administrative remedies.

On December 14, 2007, defendants filed a motion to amend their answer to add proposed affirmative defense 23:  "Plaintiff failed to exhaust her administrative remedies."  Defendants' Opening Brief at Exhibit F.

This is plaintiff's answering brief in opposition to defendants' motion.

## STATEMENT OF FACTS

Plaintiff Elizabeth Huovinen is a firefighter with the Wilmington Fire Department ("WFD").  Plaintiff asserts in this case that she has been subjected to, *inter alia*, discriminatory practices, harassment, battery, and intentional infliction of emotional distress through the actions of defendant Kenneth S. Bukowski and other members of the WFD.  Prior to the filing of this action, plaintiff pursued administrative remedies through the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC").  The Department of Labor found reasonable cause that plaintiff had been discriminated against based on her sex/gender, but it found against her with respect to sexual harassment.  Exhibit-4.  Upon plaintiff's request, the EEOC adopted the findings of the DDOL.

Plaintiff commenced this action in June 2007.  Exhibit-1.  Prior to the filing of a responsive pleading, plaintiff filed an amended complaint.  Exhibit-2.  Both the complaint and the amended complaint set forth plaintiff's allegations in detail.  Defendants responded to the amended complaint through an answer filed in August 2007.  Defendants raised 22 affirmative defenses in their answer.  Exhibit-3.

Defendants now seek to raise an additional defense of failure to exhaust administrative remedies.  Plaintiff opposes this motion on the grounds that defendants either mischaracterize the claims in this case, or else seek to address claims that are not in the case.

## SUMMARY OF ARGUMENT

Defendants seek to amend their answer to assert a new affirmative defense purportedly on the ground that plaintiff has altered her claims or raised new claims during this case. Review of the pleadings and exhibits indicates that defendants are incorrect in asserting that plaintiff has added any new claims during the course of this action. Accordingly, defendants can point to no legitimate reasons justifying the assertion of a new affirmative defense under these circumstances.

<u>ARGUMENT</u>

DEFENDANTS' MOTION TO AMEND THEIR ANSWER
SHOULD BE DENIED AS IT IS NOT BASED ON ANY
NEW CLAIMS AND THERE IS NO GOOD CAUSE FOR
SUCH AN AMENDMENT

Defendants' motion to amend their complaint should be denied as it is not based on any new claims. Defendants' motion appears grounded entirely in defendants' interpretation of evidence that has been developed during the course of discovery, rather than with any new claims that have been asserted.

On page 2 of its Opening Brief, defendants list four purported claims that allegedly were not asserted before the Delaware Department of Labor ("DDOL") or the Equal Employment Opportunity Commission ("EEOC"). Defendants further assert that these allegedly new claims arose either during discovery itself, or in conversations between counsel. Defendants' assertions in this regard are demonstrably incorrect.

First, defendants appear to allege that sexual harassment was asserted for the first time during discovery. That is incorrect. In her original DDOL Charge of Discrimination, plaintiff asserted that her immediate supervisor, Lieutenant Bukowski, "continues to subject her to harassment that includes physical touching." Exhibit-3. That charge is set forth in detail in plaintiff's amended complaint. *See* Exhibit-2 at ¶¶ 17, 26. Moreover, the DDOL determination expressly addressed sexual harassment. Exhibit-4.

Secondly, in her initial DDOL filing, plaintiff asserted harassment and "verbal abuse" by Lieutenant Bukowski. Exhibit-3. Again, that charge is set forth in detail throughout plaintiff's amended complaint (*see, e.g.*, ¶¶ 23, 25, 27), as well as the DDOL determination. Exhibit-4.

Next, the lack of training claim asserted by plaintiff is included within the allegations of discrimination and harassment in the DDOL filing, as well as set forth in detail within the amended complaint. *See* Exhibit-3 at ¶¶ 8-12, 63. The DDOL determination discusses plaintiff's allegation that Lieutenant Bukowski treated plaintiff differently than male firefighters. Exhibit-4.

The discrimination and harassment charges brought by plaintiff included improper housing facilities for female firefighters. *See* Exhibit-3 at ¶9. At least one incident, when Lieutenant Bukowski passed through the mere shower curtain comprising the door to the female firefighters' quarters and jumped on plaintiff while she was in bed (Amended Complaint at 17) is directly attributable to insufficient or discriminatory housing conditions. *See also* Amended Complaint at ¶9 (male firefighter entered plaintiff's area and exposed himself). As addressed above, the DDOL expressly addressed sexual harassment.

The last example listed by defendants is allegedly a claim of "discriminatory recruiting practices." Opening Brief at 2. Plaintiff has, in fact, never asserted that claim. The subject itself came up during depositions of WFD employees in the context of WFD's general treatment of female firefighters. The fact that a subject came up in discovery does not mean that it comprises a separate claim or justifies an amended answer. Indeed, there is nothing to answer in this regard.

Plaintiff cites the case of *Hall v. Operative Plasterers' and Cement Masons' Int'l Assoc. Local Union 143*, 188 F.Supp.2d 1013 (S.D. Ill. 2001) for the proposition that leave to amend answers is freely given. That is correct in principle. However, in *Hall*, the proposed defense was key to the defense of the claims themselves. By contrast, in this case, defendants seek to amend their answer to address either claims that do not exist, or claims which were properly

asserted at the outset and to which 22 other affirmative defenses were raised. The fact that 22 affirmative defenses were originally raised by defendants suggests that serious thought was given to the subject of affirmative defenses, and that a conscious decision was made not to include other possible defenses - such as the one at issue here.

Defendants assert that their proposed defense would not be futile (Opening Brief at 4), but they then again rely on the proposition that plaintiff is somehow raising new claims to which defendants did not have an opportunity to respond. That is simply not the case.

Plaintiff respectfully submits that defendants have failed to show proper grounds justifying an amended answer at this point. Accordingly, plaintiff requests that the Court deny defendants' motion.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff Elizabeth Huovinen respectfully requests that the Court deny defendants' motion to amend their answer.

BIGGS AND BATTAGLIA

/s/  Steven F. Mones
Victor F. Battaglia  (Del. Bar #156)
Steven F. Mones  (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
302-655-9677
smones@batlaw.com
Attorneys for Plaintiff Elizabeth Huovinen

December 31, 2007

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2007 JUN -7 PM 3: 36

ELIZABETH A. HUOVINEN
(f/k/a Elizabeth Taylor),

          Plaintiff,

      v.

CITY OF WILMINGTON and
KENNETH BUKOWSKI,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 07-    **0 7 - 3 6 2**

JURY TRIAL DEMANDED

## COMPLAINT

### The Parties

1.    Plaintiff Elizabeth A. Huovinen (formerly known as Elizabeth Taylor) is a citizen of, and resides in, the State of Delaware.  At all times relevant to the claims in this action, plaintiff was employed as a firefighter with the Wilmington Fire Department ("WFD" or the "Department"), a department of defendant City of Wilmington.

2.    Defendant City of Wilmington is a municipal entity organized under the laws of the State of Delaware.

3.    Defendant Kenneth Bukowski is a resident of the State of Delaware and an employee of defendant City of Wilmington.  At all times relevant to the claims in this action, defendant Bukowski was employed as a lieutenant with WFD.

### Jurisdiction and Venue

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as well as under 42 U.S.C. §2000e.  Supplemental jurisdiction over the related state law claims asserted in this Complaint is based on 28 U.S.C. §1367.

5.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

1

## Background and Facts

6.    Plaintiff joined WFD as a firefighter in September 2002. Plaintiff is one of only six women in the Department.

7.    After her initial period of training at the Wilmington Fire Department Academy, plaintiff was assigned as a firefighter to Engine Station 5, Platoon B ("E5B"). As a "rookie" firefighter, plaintiff was assigned typical firefighter duties as well as additional assignments involving training on the various types of equipment. Plaintiff's original supervising officer was Lieutenant Trentham.

8.    During her first year as a firefighter, plaintiff, the only female firefighter in her platoon, became concerned that she was being treated differently from the male firefighters in her platoon. In particular, plaintiff was not given the same opportunities for training on the Department's equipment that was afforded to her male colleagues.

9.    During 2003, plaintiff discussed her lack of opportunities for training with Lt. Trentham, but nothing was done. Plaintiff also discussed with Lt. Trentham the fact that she had experienced overt acts of sexual harassment from certain firefighters within E5A. On one night, firefighter Pczcola entered plaintiff's sleeping area, an area that was delineated from the male area by only a curtain, pulled down his pants, and exposed and waggled his penis in front of plaintiff. Later that night, firefighter Pczcola repeated the incident.

10.    In September 2003, plaintiff sought a transfer to a "double house" or "double company" which is a fire station having both an engine company and a ladder company. These double houses were more desirable assignments within the Department because they provided more visibility to the Department's upper management and accompanying opportunities for professional advancement. On the application for transfer, plaintiff stated the reason as "lack of

2

training" which referred to her inability to obtain training on the Department's equipment to the same degree as her male colleagues.

11.    When the Department learned that plaintiff sought a transfer, Battalion Chief Frances X. Gildea told plaintiff that he would not submit her application up the chain of command unless she deleted the reference to "lack of training." Plaintiff was told to resubmit the application with the reason for transfer listed as a desire for "cross-training" (with a ladder company), but the application was denied by Deputy Chief Kalinowski without a reason being stated.

12.    After her transfer was denied, plaintiff wrote to the Department's then-Chief, James W. Ford, Jr., on or about January 6, 2004, concerning the disparate treatment she was experiencing. Chief Ford discussed the matter of plaintiff's disparate treatment with Deputy Chief Kalinowski who then spoke to the firefighters in small groups. The treatment of plaintiff did not change during this time period.

13.    In mid-January 2004, plaintiff was transferred to Engine Station 6, platoon A ("E6A"). Plaintiff's supervising officer in E6A was Lt. Martin. During the time she served under Lt. Martin, in E6A, plaintiff noticed a distinct change in her treatment. Plaintiff was treated with respect by Lt. Martin, and she experienced the same opportunities for training and professional growth as her male colleagues. However, plaintiff continued to experience discriminatory and otherwise wrongful conduct on the part of other members of the Department.

14.    During the fall of 2004, while Lt. Mazzio was serving as Acting Lieutenant, plaintiff discovered several male firefighters watching pornography on a television in the officers' quarters at the fire station. Such conduct was not only offensive to plaintiff as the only female firefighter present, but it constituted an express violation of the Departments rules and

3

regulations.   Article 3.22 of the Rules and Regulations of the Wilmington Fire Department

provide as follows:

> Pornographic materials (videos, magazines, films, etc.) are not permitted on fire department property.  These materials are not limited to those items listed above. Class E violation.

15.   Plaintiff registered a complaint about the pornography to Acting Lt. Mazzio, but

he did nothing to stop the activity and he told plaintiff that she was being unreasonable.

16.   Battalion Chief Huelsenbeck was called to the station and spoke to plaintiff about

the situation.  Battalion Chief Huelsenbeck told plaintiff that she should not make a complaint

about the incident as she would be labeled a "troublemaker" and she might wind up being

transferred.   Battalion Chief Huelsenbeck ordered Lt. Mazzio to apologize to plaintiff, and

plaintiff agreed not to file a formal complaint.

17.   Immediately after the incident, plaintiff retired to her sleeping area, which was

separated from the male sleeping area by only a couple of pieces of plywood and a shower

curtain liner.  Lt. Bukowski (then a firefighter, not yet a lieutenant), who had been viewing the

pornography in the other room, entered plaintiff's sleeping area and jumped on the bed on top of

her to simulate a sexual act.  Plaintiff protested, and Lt. Bukowski laughed and left the area.

18.   No action was taken against Lt. Bukowski for the above conduct even though his

conduct violated Article 3.51 of the rules and regulations of the Department which provides, in

pertinent part:

> 3:51 Sexual Harassment
>
> 1.   Employee Related
>
> > Members of the department are prohibited from engaging in activity defined as Sexual Harassment.  For the purpose of this rule, sexual harassment is defined as any unwelcome sexual

4

advances, requests for sexual favors or other verbal or physical contact of a sexual nature when:

A.    Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment.

...

C.    Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

19.    The conduct of Lt. Bukowski and the other male firefighters violated Article 3.51 in that plaintiff was placed in the uncomfortable and inappropriate position of being subjected to behavior that clearly violated the rules and regulations of the Department and which, by the very language of the rule itself, created an intimidating, hostile, and offensive work environment.

20.    In January 2005, Lt. Scholl assumed command of E6A. Lt. Scholl, unlike his predecessor Lt. Martin, treated plaintiff in a demeaning and discriminatory manner. Plaintiff complained about this disparate treatment to Battalion Chief Brock who, plaintiff believes, told Lt. Scholl to cease his discriminatory conduct towards plaintiff. Such conduct did not abate, however, and plaintiff continued to be treated differently than her male colleagues.

21.    In January 2006, Lt. Bukowski received a promotion from firefighter to lieutenant, and he was transferred to E6A to become supervising officer of plaintiff's platoon. Shortly before the promotion and transfer became effective, Lt. Bukowski approached plaintiff from behind, rubbed her shoulders, and said "I have to flirt with you now because I am about to become an officer." This contact was unwelcome, unprofessional, objectionable, and in violation of Article 3.52 of the Department's rules and regulations.

22.    Shortly after assuming command, at a roll call when the entire platoon was present, Lt. Bukowski stated that there was "only one ass I want to look at in here" referring to plaintiff who was the only female in the platoon.

23.    On or about January 20, 2006, plaintiff was participating in a training exercise involving a fire truck. In front of all the attending firefighters, Lt. Bukowski asked plaintiff a question about a particular evolution. Upon hearing her response, he told her she was incorrect and belittled her in front of her peers. In fact, plaintiff was correct, and Lt. Bukowski had confused the procedures for two pieces of equipment. Lt. Bukowski never apologized to plaintiff or acknowledged his error despite the fact that he had criticized her unjustly in front of her colleagues.

24.    Lt. Bukowski criticized plaintiff for reporting for duty out of uniform on at least one occasion. Lt. Bukowski failed to take into consideration the fact that plaintiff was the only female firefighter on duty at that time, and she had to wait for ten male firefighters to dress before she could use the only locker room. To this day, the Department does not provide separate locker or changing rooms for female firefighters.

25.    On or about March 9, 2006, plaintiff was driving a fire truck en route to a scene. Lt. Bukowski was present in the truck, and he was giving plaintiff orders as to the directions to follow to the fire scene. Plaintiff accidentally took a wrong turn and she was severely criticized by Lt. Bukowski for allegedly disregarding his instructions intentionally. Back at the station, Lt. Bukowski shouted at plaintiff in a loud and threatening voice in his office. Plaintiff left his office and went to the firefighters' locker room. Lt. Bukowski chased her and plaintiff entered the bathroom to escape from him. The bathroom door had no lock, and plaintiff held the door shut while Lt. Bukowski ranted at her from the locker room side of the door. A firefighter had to

physically place himself between Lt. Bukowski and the door to prevent Lt. Bukowski from entering the bathroom. Male firefighters who made similar errors were never criticized or treated in that hostile, threatening, physical, and inappropriate manner.

26.     On May 16, 2006, as firefighters were about to board a truck to respond to a call, Lt. Bukowski grabbed plaintiff by her hair and pulled her backwards. Plaintiff objected, but Lt. Bukowski considered the incident to be mere "horseplay." Plaintiff has never seen Lt. Bukowski engage in such "horseplay" with any male firefighters in the Department.

27.     Later on May 16, 2006, as plaintiff was driving the fire truck with Lt. Bukowski aboard as the officer in charge, plaintiff turned onto a particular street, as had been intended. Lt. Bukowski then screamed at plaintiff about the route she had taken. Once again, Lt. Bukowski accused plaintiff of deliberately ignoring his instructions even though he never issued explicit instructions for their route of travel. Moreover, Lt. Bukowski never acted in that manner towards male firefighters in similar situations.

28.     Immediately following the discriminatory and harassing incidents on May 16, 2006, plaintiff sought a conference with Battalion Chief Huelsenbeck. In response to hearing plaintiff's report on Lt. Bukowski's improper conduct, Battalion Chief Huelsenbeck told plaintiff that she needed to "get a thicker skin" and that if she kept complaining, she would wind up being transferred to Station 3.

29.     The hostile and discriminatory environment fostered by Lt. Bukowski did not abate after plaintiff's meeting with Battalion Chief Huelsenbeck. Accordingly, in June 2006, plaintiff, through counsel, wrote to the City's Director of Personnel, Monica Gonzalez-Gillespie, and asked for confirmation that the Department would not retaliate against plaintiff for her complaints. There was no response from the City Personnel Department or the Fire Department.

Moreover, the hostile environment and discriminatory conduct created by Lt. Bukowski continued.

30.    On July 20, 2006, plaintiff through her counsel again wrote to Ms. Gonzalez-Gillespie about the matter. Once again, there was no response.

31.    On August 2, 2006, without any prior notice or discussion, plaintiff was notified that she was being transferred from Fire Station 6 to Fire Station 5. Plaintiff lost her choice assignment at a "double house" due to her complaints about Lt. Bukowski's improper conduct. Lt. Bukowski was also transferred, but to another "double house," which was essentially a lateral move. By contrast, plaintiff was transferred to a "single house" that was on the periphery of the Department's activity.

32.    In response to plaintiff's complaints that she was being subjected to retaliation, the Department responded that it was following its "policy" of separating individuals involved in charges of sexual harassment. Plaintiff has never seen any such policy in writing, and no specific rule or regulation has ever been disclosed to her as controlling the matter.

33.    Plaintiff learned after her transfer to Fire Station 5 that another firefighter, Martina DeJesus-Tyson, had asserted claims of gender discrimination against Lt. Bukowski while they were at Fire Station 4. Lt. Bukowski was transferred once again, but unlike the situation involving plaintiff, Ms. DeJesus-Tyson was not transferred. That constitutes disparate and inconsistent treatment by the Department.

34.    Plaintiff was told that her transfer to Station 5 constituted a "temporary duty" assignment during the investigation of the matter involving Lt. Bukowski. However, to the best of plaintiff's knowledge, the Department has no official status of "temporary duty." Moreover, to the best of plaintiff's knowledge, no formal investigation of Lt. Bukowski was conducted by

8

the Department or the City. Dept. Chief Kalinowski informed plaintiff that she was being temporarily reassigned due to the pending litigation (plaintiff had filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC").

35.    In December 2006, plaintiff learned that she was being transferred yet again, as of January 2007, as part of the routine end-of-year transfers. Plaintiff was transferred back to Station 6, but to a different platoon. Plaintiff sought reassignment to her original Engine 6 assignment, but she was told by new-Chief Willie J. Patrick that it was decided that she needed a "strong officer" to serve above her, and that E6B would provide such a "strong officer." Chief Patrick also told plaintiff that Deputy Chief Kalinowski had made this decision for "operational reasons," and it was being accepted by the Department.

36.    Plaintiff mentioned to Chief Patrick that her original platoon, E6D, was in need of an experienced emergency medical technician ("EMT"), who had Spanish language skills, and that she possessed both those qualifications. A transfer back to E6D would also have provided plaintiff with a schedule that meshed with that of her fiancee who was also a firefighter. The Department refused even though plaintiff was qualified for the vacant position and it would have benefited both the Department and her personally.

37.    During early 2007, plaintiff learned that Lt. Bukowski was spreading a rumor that plaintiff's claims had been dropped or dismissed. That was not true as Lt. Bukowski was well aware. In addition, Lt. Bukowski spread other rumors throughout the Department accusing plaintiff of being a troublemaker. Lt. Bukowski's deliberate misrepresentations were intended to harm plaintiff's reputation within the Department and they served to exacerbate the hostile work environment she faced.

38.    Plaintiff no longer serves under Lt. Bukowski during regular work hours, but she has been denied the opportunity to work overtime because the Department's procedure for overtime could cause her to be assigned to serve with or under Lt. Bukowski. Plaintiff submitted two requests to the Department, in writing, seeking assurance that she would not be assigned to work at the same station with Lt. Bukowski, but the Department has not responded. The Department's lack of action on this matter has resulted in economic loss to plaintiff through loss of opportunities to work overtime which is normal for firefighters.

39.    At this time, plaintiff continues to serve as a firefighter with the Department. Plaintiff conducts herself according to the rules, regulations, and principles of the Department, and continues to serve the City. Like all firefighters, plaintiff risks her life every time she goes out on a call. Unlike other firefighters, however, plaintiff has been continually subjected to demeaning, discriminatory, and hostile conduct by Lt. Bukowski, an officer selected and delegated by the Department to lead firefighters in life-threatening activities. Defendants:

    (a)    Created and subjected plaintiff to a hostile work environment based on her gender;

    (b)    Failed to provide her with training and other opportunities based on her gender;

    (c)    Subjected her to unjust criticism motivated and based on her gender;

    (d)    Subjected her to, or tolerated, unwanted and inappropriate physical conduct of a sexual nature directed at her;

(e)    Subjected her to transfers that were inappropriate and retaliatory, based on her complaints of inappropriate and illegal behavior on the part of other individuals in the Department;

(f)    Failed to take reasonable and appropriate action against individuals within the Department who consistently engaged in illegal, discriminatory, and hostile conduct towards plaintiff;

(g)    Failed to conduct a reasonable and appropriate investigation of the issues reported by plaintiff despite the existence of overwhelming corroborative evidence in the form of eyewitnesses to the illegal, discriminatory, and hostile conduct by members of the Department;

(h)    Retaliated against plaintiff despite the fact that she was the victim of illegal, discriminatory, and hostile conduct by members of the Department;

(i)    Failed to follow the rules and regulations established by the Department to handle matters reported by plaintiff;

(j)    Failed to treat plaintiff in a fair and consistent manner under the rules and regulations of the Department and federal and state laws;

(j)    Failed to take reasonable steps to ensure that plaintiff would not serve with or under Lt. Bukowski during overtime activities; and

(k)    Through the Chief, Deputy Chief, and other senior members of the WFD, acting for the City of Wilmington, failed to take appropriate and reasonable action to remedy the illegal, harassing, and discriminatory conduct to which plaintiff was subjected.

11

<u>Requisites</u>

40.     At all times relevant to the allegations in the complaint, the Wilmington Fire

Department continuously engaged in an industry affecting commerce within the meaning of 42

*U.S.C.* §2000e(g) and (h).

41.     Plaintiff has complied with all the requirements of 42 *U.S.C.* §2000e, *et seq*. and

19 *Del.C.* §710 *et seq*. for the filing of this legal action in that a charge of discrimination was

filed with the Office of the Equal Employment Opportunity Commission ("EEOC") alleging that

she had suffered discrimination and retaliation in violation of Title VII, 42 *U.S.C.* §2000e, *et seq*

*and*19 *Del.C.* §710 *et seq*.

42.     On or about January 23, 2007, the DDOL issued a decision holding that there was

reasonable cause to believe that an unlawful employment practice occurred with respect to

plaintiff's employment with Wachovia.  The matter was then submitted to the EEOC for review.

On or about March 27, 2007, the EEOC issued a "right to sue" notice to plaintiff.

COUNT 1
DISCRIMINATION
(Title VII, 42 *U.S.C.* §2000e *et seq*. and 19 *Del.C.* §710 *et seq*.)

43.     Plaintiff reasserts the allegations in paragraphs 1-42  above.

44.     Defendants engaged in conduct and actions constituting discrimination against

plaintiff based on her gender.

45.     Defendants created a hostile work environment through their wrongful and

discriminatory conduct towards plaintiff.

46.    Defendants' wrongful and discriminatory conduct denied plaintiff the opportunity to continue working at an duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for plaintiff.

47.    Defendants' wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of her rights.

48.    Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq.* and 19 *Del.C.* §710 *et seq.*, entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 2
## RETALIATION
### (Title VII, 42 *U.S.C.* §2000e *et seq.* and 19 *Del.C.* §710 *et seq.*)

49.    Plaintiff reasserts the allegations in paragraphs 1-48 above.

50.    Plaintiff was denied the opportunity to continue working at a duty assignment in which would have fostered her professional growth and opportunities.

51.    Defendants retaliated against plaintiff for raising complaints about the harassing and discriminatory actions of Lt. Bukowski, and the hostile work environment her created and fostered.

52.    Defendants retaliated against plaintiff by transferring her from a suitable duty assignment while not doing so with respect to at least one other employee who also complained of harassment or discriminatory on the part of Lt. Bukowski.

53.    Defendants' wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of her rights.

54.    Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq.* and 19 *Del.C.* §710 *et seq.*,

## COUNT 3
## STATE LAW CLAIM - *PRIMA FACIE* TORT

55.    Plaintiff reasserts the allegations in paragraphs 1-54 above.

56.    Defendants have committed *prima facie* tort by intentionally, maliciously, and without justification harming plaintiff by:

(a)    Engaging in, or permitting the existence of, conduct of a discriminatory and harassing nature based on plaintiff's status as a female;

(b)    Knowingly fabricating or manufacturing false reasons for her transfer to a different duty assignment;

(c)    Engaging in employment practices and acts towards plaintiff based on her gender;

(d)    Retaliating against plaintiff due to her reporting of the wrongful conduct against her;

(e)    Wrongfully and adversely affecting plaintiff's career opportunities with the Department due to her status as a female.

57.    Defendants' wrongful, intentional, and malicious actions against and conduct towards plaintiff, or their failure to act, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime

income entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 4
## STATE LAW CLAIM - BATTERY

58.    Plaintiff reasserts the allegations in paragraphs 1-57 above.

59.    Defendant Bukowski knowingly and intentionally engaged in acts of physical contact with plaintiff while they were on duty including jumping on her bed and simulating a sexual act, grabbing her hair, and touching or rubbing her shoulders.

60.    Defendant City of Wilmington is liable, under the doctrine of *respondeat superior* or other applicable principles of agency, for the wrongful conduct of defendant Bukowski as such conduct occurred while plaintiff and defendant Bukowski were on duty, and in spite of the fact that the City of Wilmington had been made aware of defendant Bukowski's conduct and actions and had taken insufficient or no steps to stop the conduct and prevent it from occurring in the future.

## COUNT 5
## STATE LAW CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.    Plaintiff reasserts the allegations in paragraphs 1-60 above.

62.    Defendant Bukowski's conduct constituted intentional infliction of emotional distress in that he acted deliberately and in such a manner as to cause plaintiff to suffer emotional distress and mental anguish.

63.    Defendant Bukowski engaged in a consistent pattern of harassing, discriminatory, and otherwise wrongful and inappropriate conduct, including inappropriate multiple acts of physical contact, directed expressly at plaintiff.

15

64.     As a direct and proximate result of the intentionally wrongful conduct of defendant Bukowski, plaintiff suffered physical injuries and harm including irritable bowel syndrome and required medical care and psychological counseling, as well as loss of opportunity for overtime income.

THEREFORE, plaintiff demands that judgment be entered in her favor and against defendants, jointly and severally, as follows:

(1)     Compensatory damages for past, present, and future emotional distress and psychological and physical harm, as well as lost overtime income;

(2)     Punitive damages;

(3)     Equitable relief in the form of reinstatement to her position with the platoon she with which she was serving;

(4)     Costs of this action;

(5)     Reasonable attorneys fees;

(6)     Prejudgment and postjudgment interest at the applicable legal rate(s);

(7)     Such other relief as the Court deems just and appropriate.

BIGGS AND BATTAGLIA

_____

Victor F. Battaglia, Sr. (Del. Bar #156)
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
Tel:  302-655-9677
Fax:  302-655-7924
smones@batlaw.com
Attorneys for Plaintiff

June 7, 2007

EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH A. HUOVINEN<br>(f/k/a Elizabeth Taylor), | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 07-362 SLR |
| v. | ) ) | JURY TRIAL DEMANDED |
| CITY OF WILMINGTON and<br>KENNETH BUKOWSKI, | ) ) ) ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

### The Parties

1.    Plaintiff Elizabeth A. Huovinen (formerly known as Elizabeth Taylor) is a citizen of, and resides in, the State of Delaware. At all times relevant to the claims in this action, plaintiff was employed as a firefighter with the Wilmington Fire Department ("WFD" or the "Department"), a department of defendant City of Wilmington.

2.    Defendant City of Wilmington is a municipal entity organized under the laws of the State of Delaware.

3.    Defendant Kenneth Bukowski is a resident of the State of Delaware and an employee of defendant City of Wilmington. At all times relevant to the claims in this action, defendant Bukowski was employed as a lieutenant with WFD.

### Jurisdiction and Venue

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as well as under 42 U.S.C. §2000e, and 42 U.S.C. §1983. Supplemental jurisdiction over the related state law claims asserted in this Complaint is based on 28 U.S.C. §1367.

5.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

1

Background and Facts

6.    Plaintiff joined WFD as a firefighter in September 2002.  Plaintiff is one of only six women in the Department.

7.    After her initial period of training at the Wilmington Fire Department Academy, plaintiff was assigned as a firefighter to Engine Station 5, Platoon B ("E5B").  As a "rookie" firefighter, plaintiff was assigned typical firefighter duties as well as additional assignments involving training on the various types of equipment.  Plaintiff's original supervising officer was Lieutenant Trentham.

8.    During her first year as a firefighter, plaintiff, the only female firefighter in her platoon, became concerned that she was being treated differently from the male firefighters in her platoon.  In particular, plaintiff was not given the same opportunities for training on the Department's equipment that was afforded to her male colleagues.

9.    During 2003, plaintiff discussed her lack of opportunities for training with Lt. Trentham, but nothing was done.  Plaintiff also discussed with Lt. Trentham the fact that she had experienced overt acts of sexual harassment from certain firefighters within E5A.  On one night, firefighter Pczcola entered plaintiff's sleeping area, an area that was delineated from the male area by only a curtain, pulled down his pants, and exposed and waggled his penis in front of plaintiff.  Later that night, firefighter Pczcola repeated the incident.

10.    In September 2003, plaintiff sought a transfer to a "double house" or "double company" which is a fire station having both an engine company and a ladder company.  These double houses were more desirable assignments within the Department because they provided more visibility to the Department's upper management and accompanying opportunities for professional advancement.  On the application for transfer, plaintiff stated the reason as "lack of

training" which referred to her inability to obtain training on the Department's equipment to the same degree as her male colleagues.

11.    When the Department learned that plaintiff sought a transfer, Battalion Chief Frances X. Gildea told plaintiff that he would not submit her application up the chain of command unless she deleted the reference to "lack of training." Plaintiff was told to resubmit the application with the reason for transfer listed as a desire for "cross-training" (with a ladder company), but the application was denied by Deputy Chief Kalinowski without a reason being stated.

12.    After her transfer was denied, plaintiff wrote to the Department's then-Chief, James W. Ford, Jr., on or about January 6, 2004, concerning the disparate treatment she was experiencing. Chief Ford discussed the matter of plaintiff's disparate treatment with Deputy Chief Kalinowski who then spoke to the firefighters in small groups. The treatment of plaintiff did not change during this time period.

13.    In mid-January 2004, plaintiff was transferred to Engine Station 6, platoon A ("E6A"). Plaintiff's supervising officer in E6A was Lt. Martin. During the time she served under Lt. Martin, in E6A, plaintiff noticed a distinct change in her treatment. Plaintiff was treated with respect by Lt. Martin, and she experienced the same opportunities for training and professional growth as her male colleagues. However, plaintiff continued to experience discriminatory and otherwise wrongful conduct on the part of other members of the Department.

14.    During the fall of 2004, while Lt. Mazzio was serving as Acting Lieutenant, plaintiff discovered several male firefighters watching pornography on a television in the officers' quarters at the fire station. Such conduct was not only offensive to plaintiff as the only female firefighter present, but it constituted an express violation of the Departments rules and

3

regulations. Article 3.22 of the Rules and Regulations of the Wilmington Fire Department provide as follows:

> Pornographic materials (videos, magazines, films, etc.) are not permitted on fire department property. These materials are not limited to those items listed above. Class E violation.

15.    Plaintiff registered a complaint about the pornography to Acting Lt. Mazzio, but he did nothing to stop the activity and he told plaintiff that she was being unreasonable.

16.    Battalion Chief Huelsenbeck was called to the station and spoke to plaintiff about the situation. Battalion Chief Huelsenbeck told plaintiff that she should not make a complaint about the incident as she would be labeled a "troublemaker" and she might wind up being transferred. Battalion Chief Huelsenbeck ordered Lt. Mazzio to apologize to plaintiff, and plaintiff agreed not to file a formal complaint.

17.    Immediately after the incident, plaintiff retired to her sleeping area, which was separated from the male sleeping area by only a couple of pieces of plywood and a shower curtain liner. Lt. Bukowski (then a firefighter, not yet a lieutenant), who had been viewing the pornography in the other room, entered plaintiff's sleeping area and jumped on the bed on top of her to simulate a sexual act. Plaintiff protested, and Lt. Bukowski laughed and left the area.

18.    No action was taken against Lt. Bukowski for the above conduct even though his conduct violated Article 3.51 of the rules and regulations of the Department which provides, in pertinent part:

> 3:51 Sexual Harassment
>
> 1.    Employee Related
>
> > Members of the department are prohibited from engaging in activity defined as Sexual Harassment. For the purpose of this rule, sexual harassment is defined as any unwelcome sexual

advances, requests for sexual favors or other verbal or physical contact of a sexual nature when:

A.    Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment.

...

C.    Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

19.    The conduct of Lt. Bukowski and the other male firefighters violated Article 3.51 in that plaintiff was placed in the uncomfortable and inappropriate position of being subjected to behavior that clearly violated the rules and regulations of the Department and which, by the very language of the rule itself, created an intimidating, hostile, and offensive work environment.

20.    In January 2005, Lt. Scholl assumed command of E6A.  Lt. Scholl, unlike his predecessor Lt. Martin, treated plaintiff in a demeaning and discriminatory manner.  Plaintiff complained about this disparate treatment to Battalion Chief Brock who, plaintiff believes, told Lt. Scholl to cease his discriminatory conduct towards plaintiff.  Such conduct did not abate, however, and plaintiff continued to be treated differently than her male colleagues.

21.    In January 2006, Lt. Bukowski received a promotion from firefighter to lieutenant, and he was transferred to E6A to become supervising officer of plaintiff's platoon.  Shortly before the promotion and transfer became effective, Lt. Bukowski approached plaintiff from behind, rubbed her shoulders, and said "I have to flirt with you now because I am about to become an officer."  This contact was unwelcome, unprofessional, objectionable, and in violation of Article 3.52 of the Department's rules and regulations.

22.    Shortly after assuming command, at a roll call when the entire platoon was present, Lt. Bukowski stated that there was "only one ass I want to look at in here" referring to plaintiff who was the only female in the platoon.

23.    On or about January 20, 2006, plaintiff was participating in a training exercise involving a fire truck. In front of all the attending firefighters, Lt. Bukowski asked plaintiff a question about a particular evolution. Upon hearing her response, he told her she was incorrect and belittled her in front of her peers. In fact, plaintiff was correct, and Lt. Bukowski had confused the procedures for two pieces of equipment. Lt. Bukowski never apologized to plaintiff or acknowledged his error despite the fact that he had criticized her unjustly in front of her colleagues.

24.    Lt. Bukowski criticized plaintiff for reporting for duty out of uniform on at least one occasion. Lt. Bukowski failed to take into consideration the fact that plaintiff was the only female firefighter on duty at that time, and she had to wait for ten male firefighters to dress before she could use the only locker room. To this day, the Department does not provide separate locker or changing rooms for female firefighters.

25.    On or about March 9, 2006, plaintiff was driving a fire truck en route to a scene. Lt. Bukowski was present in the truck, and he was giving plaintiff orders as to the directions to follow to the fire scene. Plaintiff accidentally took a wrong turn and she was severely criticized by Lt. Bukowski for allegedly disregarding his instructions intentionally. Back at the station, Lt. Bukowski shouted at plaintiff in a loud and threatening voice in his office. Plaintiff left his office and went to the firefighters' locker room. Lt. Bukowski chased her and plaintiff entered the bathroom to escape from him. The bathroom door had no lock, and plaintiff held the door shut while Lt. Bukowski ranted at her from the locker room side of the door. A firefighter had to

physically place himself between Lt. Bukowski and the door to prevent Lt. Bukowski from entering the bathroom. Male firefighters who made similar errors were never criticized or treated in that hostile, threatening, physical, and inappropriate manner.

26.     On May 16, 2006, as firefighters were about to board a truck to respond to a call, Lt. Bukowski grabbed plaintiff by her hair and pulled her backwards. Plaintiff objected, but Lt. Bukowski considered the incident to be mere "horseplay." Plaintiff has never seen Lt. Bukowski engage in such "horseplay" with any male firefighters in the Department.

27.     Later on May 16, 2006, as plaintiff was driving the fire truck with Lt. Bukowski aboard as the officer in charge, plaintiff turned onto a particular street, as had been intended. Lt. Bukowski then screamed at plaintiff about the route she had taken. Once again, Lt. Bukowski accused plaintiff of deliberately ignoring his instructions even though he never issued explicit instructions for their route of travel. Moreover, Lt. Bukowski never acted in that manner towards male firefighters in similar situations.

28.     Immediately following the discriminatory and harassing incidents on May 16, 2006, plaintiff sought a conference with Battalion Chief Huelsenbeck. In response to hearing plaintiff's report on Lt. Bukowski's improper conduct, Battalion Chief Huelsenbeck told plaintiff that she needed to "get a thicker skin" and that if she kept complaining, she would wind up being transferred to Station 3.

29.     The hostile and discriminatory environment fostered by Lt. Bukowski did not abate after plaintiff's meeting with Battalion Chief Huelsenbeck. Accordingly, in June 2006, plaintiff, through counsel, wrote to the City's Director of Personnel, Monica Gonzalez-Gillespie, and asked for confirmation that the Department would not retaliate against plaintiff for her complaints. There was no response from the City Personnel Department or the Fire Department.

7

Moreover, the hostile environment and discriminatory conduct created by Lt. Bukowski continued.

30.    On July 20, 2006, plaintiff through her counsel again wrote to Ms. Gonzalez-Gillespie about the matter. Once again, there was no response.

31.    On August 2, 2006, without any prior notice or discussion, plaintiff was notified that she was being transferred from Fire Station 6 to Fire Station 5. Plaintiff lost her choice assignment at a "double house" due to her complaints about Lt. Bukowski's improper conduct. Lt. Bukowski was also transferred, but to another "double house," which was essentially a lateral move. By contrast, plaintiff was transferred to a "single house" that was on the periphery of the Department's activity.

32.    In response to plaintiff's complaints that she was being subjected to retaliation, the Department responded that it was following its "policy" of separating individuals involved in charges of sexual harassment. Plaintiff has never seen any such policy in writing, and no specific rule or regulation has ever been disclosed to her as controlling the matter.

33.    Plaintiff learned after her transfer to Fire Station 5 that another firefighter, Martina DeJesus-Tyson, had asserted claims of gender discrimination against Lt. Bukowski while they were at Fire Station 4. Lt. Bukowski was transferred once again, but unlike the situation involving plaintiff, Ms. DeJesus-Tyson was not transferred. That constitutes disparate and inconsistent treatment by the Department.

34.    Plaintiff was told that her transfer to Station 5 constituted a "temporary duty" assignment during the investigation of the matter involving Lt. Bukowski. However, to the best of plaintiff's knowledge, the Department has no official status of "temporary duty." Moreover, to the best of plaintiff's knowledge, no formal investigation of Lt. Bukowski was conducted by

the Department or the City.   Dept. Chief Kalinowski informed plaintiff that she was being temporarily reassigned due to the pending litigation (plaintiff had filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC").

35.     In December 2006, plaintiff learned that she was being transferred yet again, as of January 2007, as part of the routine end-of-year transfers.   Plaintiff was transferred back to Station 6, but to a different platoon.   Plaintiff sought reassignment to her original Engine 6 assignment, but she was told by new-Chief Willie J. Patrick that it was decided that she needed a "strong officer" to serve above her, and that E6B would provide such a "strong officer."   Chief Patrick also told plaintiff that Deputy Chief Kalinowski had made this decision for "operational reasons," and it was being accepted by the Department.

36.     Plaintiff mentioned to Chief Patrick that her original platoon, E6D, was in need of an experienced emergency medical technician ("EMT"), who had Spanish language skills, and that she possessed both those qualifications.   A transfer back to E6D would also have provided plaintiff with a schedule that meshed with that of her fiancee who was also a firefighter.   The Department refused even though plaintiff was qualified for the vacant position and it would have benefited both the Department and her personally.

37.     During early 2007, plaintiff learned that Lt. Bukowski was spreading a rumor that plaintiff's claims had been dropped or dismissed.   That was not true as Lt. Bukowski was well aware.   In addition, Lt. Bukowski spread other rumors throughout the Department accusing plaintiff of being a troublemaker.   Lt. Bukowski's deliberate misrepresentations were intended to harm plaintiff's reputation within the Department and they served to exacerbate the hostile work environment she faced.

38.    Plaintiff no longer serves under Lt. Bukowski during regular work hours, but she has been denied the opportunity to work overtime because the Department's procedure for overtime could cause her to be assigned to serve with or under Lt. Bukowski. Plaintiff submitted two requests to the Department, in writing, seeking assurance that she would not be assigned to work at the same station with Lt. Bukowski, but the Department has not responded. The Department's lack of action on this matter has resulted in economic loss to plaintiff through loss of opportunities to work overtime which is normal for firefighters.

39.    At this time, plaintiff continues to serve as a firefighter with the Department. Plaintiff conducts herself according to the rules, regulations, and principles of the Department, and continues to serve the City. Like all firefighters, plaintiff risks her life every time she goes out on a call. Unlike other firefighters, however, plaintiff has been continually subjected to demeaning, discriminatory, and hostile conduct by Lt. Bukowski, an officer selected and delegated by the Department to lead firefighters in life-threatening activities. Defendants:

(a)    Created and subjected plaintiff to a hostile work environment based on her gender;

(b)    Failed to provide her with training and other opportunities based on her gender;

(c)    Subjected her to unjust criticism motivated and based on her gender;

(d)    Subjected her to, or tolerated, unwanted and inappropriate physical conduct of a sexual nature directed at her;

(e)     Subjected her to transfers that were inappropriate and retaliatory, based on her complaints of inappropriate and illegal behavior on the part of other individuals in the Department;

(f)     Failed to take reasonable and appropriate action against individuals within the Department who consistently engaged in illegal, discriminatory, and hostile conduct towards plaintiff;

(g)     Failed to conduct a reasonable and appropriate investigation of the issues reported by plaintiff despite the existence of overwhelming corroborative evidence in the form of eyewitnesses to the illegal, discriminatory, and hostile conduct by members of the Department;

(h)     Retaliated against plaintiff despite the fact that she was the victim of illegal, discriminatory, and hostile conduct by members of the Department;

(i)     Failed to follow the rules and regulations established by the Department to handle matters reported by plaintiff;

(j)     Failed to treat plaintiff in a fair and consistent manner under the rules and regulations of the Department and federal and state laws;

(j)     Failed to take reasonable steps to ensure that plaintiff would not serve with or under Lt. Bukowski during overtime activities; and

(k)     Through the Chief, Deputy Chief, and other senior members of the WFD, acting for the City of Wilmington, failed to take appropriate and reasonable action to remedy the illegal, harassing, and discriminatory conduct to which plaintiff was subjected.

<u>Requisites</u>

40.    At all times relevant to the allegations in the complaint, the Wilmington Fire Department continuously engaged in an industry affecting commerce within the meaning of 42 *U.S.C.* §2000e(g) and (h).

41.    Plaintiff has complied with all the requirements of 42 *U.S.C.* §2000e, *et seq.* and 19 *Del.C.* §710 *et seq.* for the filing of this legal action in that a charge of discrimination was filed with the Office of the Equal Employment Opportunity Commission ("EEOC") alleging that she had suffered discrimination and retaliation in violation of Title VII, 42 *U.S.C.* §2000e, *et seq* and19 *Del.C.* §710 *et seq.*

42.    On or about January 23, 2007, the DDOL issued a decision holding that there was reasonable cause to believe that an unlawful employment practice occurred with respect to plaintiff's employment with Wachovia.  The matter was then submitted to the EEOC for review. On or about March 27, 2007, the EEOC issued a "right to sue" notice to plaintiff.

COUNT 1
DISCRIMINATION
(Title VII, 42 *U.S.C.* §2000e *et seq.* and 19 *Del.C.* §710 *et seq.-*
*Claims against Defendant City of Wilmington*)

43.    Plaintiff reasserts the allegations in paragraphs 1-42  above.

44.    Defendant <u>City of Wilmington (hereinafter "City")</u> engaged  in conduct and actions constituting discrimination against plaintiff based on her gender.

45.    Defendant <u>City</u> created a hostile work environment through their wrongful and discriminatory conduct towards plaintiff.

12

46.    Defendant City's wrongful and discriminatory conduct denied plaintiff the opportunity to continue working at a duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for plaintiff.

47.    Defendants City's wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of her rights.

48.    Defendants' wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq.* and 19 *Del.C.* §710 *et seq.,* entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 2
## RETALIATION
(Title VII, 42 *U.S.C.* §2000e *et seq.* and 19 *Del.C.* §710 *et seq. – Defendant City of Wilmington*)

49.    Plaintiff reasserts the allegations in paragraphs 1-48 above.

50.    Plaintiff was denied the opportunity to continue working at a duty assignment in which would have fostered her professional growth and opportunities.

51.    Defendant City retaliated against plaintiff for raising complaints about the harassing and discriminatory actions of Lt. Bukowski, and the hostile work environment her created and fostered.

52.    Defendant City retaliated against plaintiff by transferring her from a suitable duty assignment while not doing so with respect to at least one other employee who also complained of harassment or discriminatory on the part of Lt. Bukowski.

53.    Defendant City's wrongful actions against and conduct towards plaintiff were intentional, malicious, and/or made with reckless disregard of her rights.

13

54.    Defendant <u>City's</u> wrongful actions against and conduct towards plaintiff were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income and are a violation of Title VII, 42 U.S.C. ¶2000e, *et seq*. and 19 *Del.C.* §710 *et seq.*,

COUNT 3
(42 U.S.C. § 1983 – CLAIMS AGAINST DEFENDANT BUKOWSKI)

55.  Plaintiff reasserts the allegations in paragraphs 1 – 54 above.

56.  At all times Defendant Bukowski was acting under color of State law.

57.  Defendant Bukowski engaged in conduct and actions which constitute discrimination against Plaintiff based on her gender.

58.  Defendant Bukowski's wrongful and discriminatory conduct denied Plaintiff the opportunity to continue working at a duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for Plaintiff.

59.  Defendant's wrongful actions and discriminatory conduct toward Plaintiff were intentional, malicious, and/or made with reckless disregard of her rights, all in violation of Plaintiff's right to equal protection of the laws and due process of law under the United States Constitution, entitling her damages pursuant to 42 U.S.C. § 1983.

60.  The Defendant's wrongful actions and conduct toward Plaintiff were a proximate cause of Plaintiff's suffering, *inter alia*, past, present and future emotional and mental distress and loss of opportunity for overtime employment entitling Plaintiff to remedies and damages including, but not limited to, compensatory, equitable and punitive damages as set forth below.

COUNT 4
(42 U.S.C. § 1983 – CITY OF WILMINGTON)

61.  Plaintiff reasserts the allegations in paragraphs 1-60 above.

14

62.  Defendant City has engaged in conduct in actions constituting discrimination against Plaintiff based on her gender.

63.  Defendant City's wrongful and discriminatory conduct denied Plaintiff the opportunity to continue working at a duty station which afforded her greater opportunity for advancement, and through such practices, created a hostile working environment for Plaintiff.

64.  Defendant City's wrongful actions against Plaintiff and conduct towards her were intentional, malicious, and/or made with reckless disregard to her rights, all in violation of the equal protection of the laws and due process of law under the United States Constitution, entitling her damages pursuant to 42 U.S.C. § 1983.

65.  The actions of Defendant Bukowski which constituted harassment and discrimination of Plaintiff were ratified by the City.

66.  The discriminatory actions and wrongful conduct directed towards Plaintiff were pursuant to a policy of the City as they were assented to and at the direction of City policymakers.

67.  The discriminatory and unlawful actions directed against Plaintiff were caused by Defendant City's intentional and reckless failure to train and supervise its employees.

68.  The Defendant's wrongful actions and conduct toward Plaintiff were a proximate cause of Plaintiff's suffering, *inter alia*, past, present and future emotional and mental distress and loss of opportunity for overtime employment entitling Plaintiff to remedies and damages including, but not limited to, compensatory, equitable and punitive damages as set forth below.

## COUNT 5
### STATE LAW CLAIM - *PRIMA FACIE* TORT

69.    Plaintiff reasserts the allegations in paragraphs 1-68 above.

70.    Defendants have committed *prima facie* tort by intentionally, maliciously, and without justification harming plaintiff by:

    (a)    Engaging in, or permitting the existence of, conduct of a discriminatory and harassing nature based on plaintiff's status as a female;

    (b)    Knowingly fabricating or manufacturing false reasons for her transfer to a different duty assignment;

    (c)    Engaging in employment practices and acts towards plaintiff based on her gender;

    (d)    Retaliating against plaintiff due to her reporting of the wrongful conduct against her;

    (e)    Wrongfully and adversely affecting plaintiff's career opportunities with the Department due to her status as a female.

71.    Defendants' wrongful, intentional, and malicious actions against and conduct towards plaintiff, or their failure to act, were a proximate cause of plaintiff's suffering, *inter alia*, past, present, and future emotional and mental distress and loss of opportunity for overtime income entitling plaintiff to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT 6
## STATE LAW CLAIM - BATTERY

72.    Plaintiff reasserts the allegations in paragraphs 1-71 above.

73.    Defendant Bukowski knowingly and intentionally engaged in acts of physical contact with plaintiff while they were on duty including jumping on her bed and simulating a sexual act, grabbing her hair, and touching or rubbing her shoulders.

74.    Defendant City of Wilmington is liable, under the doctrine of *respondeat superior* or other applicable principles of agency, for the wrongful conduct of defendant Bukowski as such conduct occurred while plaintiff and defendant Bukowski were on duty, and in spite of the fact that the City of Wilmington had been made aware of defendant Bukowski's conduct and actions and had taken insufficient or no steps to stop the conduct and prevent it from occurring in the future.

## COUNT 7
### STATE LAW CLAIM
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75.    Plaintiff reasserts the allegations in paragraphs 1-74 above.

76.    Defendant Bukowski's conduct constituted intentional infliction of emotional distress in that he acted deliberately and in such a manner as to cause plaintiff to suffer emotional distress and mental anguish.

77.    Defendant Bukowski engaged in a consistent pattern of harassing, discriminatory, and otherwise wrongful and inappropriate conduct, including inappropriate multiple acts of physical contact, directed expressly at plaintiff.

78.    As a direct and proximate result of the intentionally wrongful conduct of defendant Bukowski, plaintiff suffered physical injuries and harm including irritable bowel syndrome and required medical care and psychological counseling, as well as loss of opportunity for overtime income.

THEREFORE, plaintiff demands that judgment be entered in her favor and against defendants, jointly and severally, as follows:

(1)     Compensatory damages for past, present, and future emotional distress and

psychological and physical harm, as well as lost overtime income;

(2)     Punitive damages;

(3)     Equitable relief in the form of reinstatement to her position with the platoon she

with which she was serving;

(4)     Costs of this action;

(5)     Reasonable attorneys fees;

(6)     Prejudgment and postjudgment interest at the applicable legal rate(s);

(7)     Such other relief as the Court deems just and appropriate.

BIGGS AND BATTAGLIA

/s/ Steven F. Mones
Victor F. Battaglia, Sr. (Del. Bar #156)
Steven F. Mones (Del. Bar #2611)
921 N. Orange Street
P.O. Box 1489
Wilmington, DE  19899-1489
Tel:  302-655-9677
Fax:  302-655-7924
smones@batlaw.com
Attorneys for Plaintiff

July 17, 2007

EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ELIZABETH A. HUOVINEN** (f/k/a Elizabeth Taylor), | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Ca. No. 07-362 SLR |
| **CITY OF WILMINGTON** and **KENNETH BUKOWSKI,** | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

### ANSWER OF DEFENDANTS CITY OF WILMINGTON AND KENNETH BUKOWSKI TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants, City of Wilmington and Kenneth Bukowski (collectively "Defendants"), by and through their undersigned attorneys, state for their Answer to the First Amended Complaint of Elizabeth A. Huovinen (f/k/a Elizabeth Taylor) ("Plaintiff"), as follows:

### The Parties[1]

1.      Admitted in part, denied in part. It is admitted that Plaintiff is employed as a firefighter with the Wilmington Police Department. Defendants are without knowledge or information sufficient to form a belief as to the truth of the balance of the allegations set forth in paragraph 1 and therefore deny them.

2.      Admitted.

3.      Denied as stated. It is admitted only that Mr. Bukowski is a resident of the State of Delaware and is currently employed as a lieutenant with the Wilmington Fire Department.

---

[1] The headings incorporated from the First Amended Complaint are incorporated herein for placement purposes only and are not intended to be statements or admissions of Defendants.

## Jurisdiction and Venue

4.    Paragraph 4 of the First Amended Complaint consists of Plaintiff's legal conclusions and characterizations of her claims and therefore requires no responsive pleading. To the extent a responsive pleading is required, the allegations of paragraph 4 are denied.

5.    Paragraph 5 of the First Amended Complaint consists of Plaintiff's legal conclusions and characterizations of her claims and therefore requires no responsive pleading. To the extent a responsive pleading is required, the allegations of paragraph 4 are denied.

## Background and Facts

6.    Admitted in part, denied in part.    It is admitted that Plaintiff joined the Wilmington Fire Department in September 2002.    It is denied that Plaintiff is one of six women in the department.

7.    Admitted.

8.    Denied.

9.    Denied.

10.    The allegations of paragraph 10 refer to written terms of a document and are therefore denied as stated.    Defendants respectfully refer the Court to the document for its complete and accurate contents.

11.    Denied.

12.    To the extent the allegations of paragraph 12 refer to written terms of a document, they are denied as stated.    Defendants respectfully refer the Court to the document for its complete and accurate contents.    The balance of the allegations of paragraph 12 are denied.

13.     Admitted in part, denied in part.  It is admitted only that Plaintiff was transferred to Engine Station 6 and that her supervising officer was Lieutenant Martin.  The balance of the allegations of paragraph 13 are denied.

14.     Denied.  By way of further answer, no report relating to the alleged conduct was ever filed by Plaintiff.

15.     Denied as stated.

16.     Denied as stated.

17.     Denied.

18.     Denied as stated.  It is admitted that no action was taken against Lieutenant Bukowski.  It is denied that he took part in the alleged conduct.  By way of further answer, Plaintiff never reported the alleged conduct nor did she otherwise take advantage of any corrective and/or preventative opportunities made available by the City with regard to the alleged conduct.

19.     Denied.

20.     Denied.

21.     Admitted in part, denied in part.  It is admitted only that Mr. Bukowski was promoted from firefighter to lieutenant.  The balance of the allegations of paragraph 21 are denied.

22.     Denied.

23.     Denied.

24.     Denied as stated. It is admitted only that Plaintiff reported for duty out of uniform on at least one occasion in violation of established rules and regulations.  By way of further answer, reasonable accommodations were always provided for Plaintiff to change into uniform.

25.    Denied as stated. It is admitted only that Plaintiff took a wrong turn en route to fire scene which Mr. Bukowski, as her immediate supervisor, discussed with her. The balance of the allegations of paragraph 25 are denied.

26.    Denied.

27.    Denied as stated. It is admitted only that Mr. Bukowski discussed with Plaintiff the fact that she took the wrong route on the way to a fire scene. The balance of the allegations are denied.

28.    Denied as stated.

29.    The allegations of paragraph 29 refer to written terms of a document and are therefore denied as stated. Defendants respectfully refer the Court to the document for its complete and accurate contents. By way of further answer, it is specifically denied that Plaintiff was subjected to a hostile and discriminatory environment as alleged in paragraph 29.

30.    The allegations of paragraph 30 refer to written terms of a document and are therefore denied as stated. Defendants respectfully refer the Court to the document for its complete and accurate contents.

31.    Denied as stated. It is admitted only that both Plaintiff and Mr. Bukowski were transferred from Fire Station 6.

32.    Denied as stated. It is admitted only that both Plaintiff and Mr. Bukowski were transferred from Fire Station 6.

33.    Denied.

34.    Denied as stated. It is admitted only that Plaintiff and Mr. Bukowski were reassigned during the pendency of this litigation.

35.    Denied as stated.  It is admitted only that Plaintiff was transferred back to Station 6, Platoon B.

36.    Denied as stated.  It is admitted only that Plaintiff sought a transfer to platoon E6D, and that, upon information and belief, such transfer would have meshed with the schedule of her then-fiancée.

37.    Denied.

38.    Denied.

39.    Denied.  Sub-paragraphs (a) through (k) are also denied.

### Requisites

40.    The allegations contained in paragraph 40 consist of Plaintiff's legal conclusions and therefore requires no responsive pleading.  To the extent a responsive pleading is required, the allegations of paragraph 40 are denied.

41.    The allegations contained in paragraph 41 consist of Plaintiff's legal conclusions and therefore requires no responsive pleading.  To the extent a responsive pleading is required, the allegations of paragraph 41 are denied.

42.    The allegations of paragraph 42 refer to written terms of a document and are therefore denied as stated.  Defendants respectfully refer the Court to the document for its complete and accurate contents.

5

## COUNT I – DISCRIMINATION
Title VII, 42 U.S.C. § 2000e *et seq.* and 19 *Del.C.* § 710 *et seq.*
Claims against City of Wilmington

43.     Defendants incorporate their responses to paragraphs 1-42 as if fully set forth

herein.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

## COUNT II – RETALIATION
Title VII, 42 U.S.C. § 2000e *et seq.* and 19 *Del.C.* § 710 *et seq.*
Claims against City of Wilmington

49.     Defendants incorporate their responses to paragraphs 1-48 as if fully set forth

herein.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

## COUNT III
42 U.S.C. § 1983 --Claims against Mr. Bukowski

55.     Defendants incorporate their responses to paragraphs 1-54 as if fully set forth

herein.

56.     Denied.

57.     Denied.

58.    Denied.

59.    Denied.

60.    Denied.

## COUNT IV
### 42 U.S.C. § 1983 --Claims against City of Wilmington

61.    Defendants incorporate their responses to paragraphs 1-60 as if fully set forth herein.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

## COUNT V
### State Law Claim – *Prima Facie* Tort

69.    Defendants incorporate their responses to paragraphs 1-68 as if fully set forth herein.

70.    Denied.  Subparagraphs (a) through (e) are also denied.

71.    Denied.

## COUNT VI
### State Law Claim – Battery

72.    Defendants incorporate their responses to paragraphs 1-71 as if fully set forth herein.

73.    Denied.

74.     Denied.

## COUNT VII

State Law Claim – Intentional Infliction of Emotional Distress

75.     Defendants incorporate their responses to paragraphs 1-74 as if fully set forth herein.

76.     Denied.

77.     Denied.

78.     Denied.

With respect to the paragraphs at the conclusion of the First Amended Complaint constituting Plaintiff's prayer for relief, Defendants deny that Plaintiff is entitled to the relief requested therein or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state claims upon which relief could be granted.

2.     Plaintiff's tort claims are barred by the County and Municipal Tort Claims Act codified at 10 *Del.C.* § 4010, *et seq.*

3.     Plaintiff's claims are barred, in whole or in part, by the Delaware Workmen's Compensation Act codified at 19 *Del.C.* § 2301, *et seq.*

4.     Plaintiff's claims may be barred, in whole or in part, by the doctrines of fraud, misrepresentation and unclean hands.

5.     Pursuant to 19 *Del.C.* § 714(c), Plaintiff's state discrimination claims are barred by plaintiff's election to prosecute her claims in a federal forum.

6.     Plaintiff's *prima facie* tort claim is barred because: 1) it conflicts with Delaware's employment at-will doctrine, and 2) the conduct complained of by Plaintiff, if true, falls within traditional categories of tort and is otherwise unlawful.

8

7.      Plaintiff's claims may be barred, in whole or in part, by the applicable statute of limitations.

8.      Plaintiff's claims may be barred, in whole or in part, by the doctrines of laches and estoppel.

9.      Plaintiff's claims under 42 U.S.C. § 1983 are preempted, in whole or in part, by Title VII, 42 U.S.C. § 2000e *et seq.*

10.     Counts I through IV are barred, in whole or in part, because any adverse employment actions suffered by plaintiff, if any, were the result of legitimate nondiscriminatory reasons.

11.     Plaintiff's claims against the City are barred because the City does not bear *respondeat superior* liability for the actions of its employees.

12.     Plaintiff's § 1983 claims against the City are barred because the City never adopted a policy to discriminate or retaliate against any minority group.

13.     Plaintiff's § 1983 claims against the City are barred because no official with final policy-making authority ratified any alleged conduct taken by Mr. Bukowski, even if true.

14.     Plaintiff's request for punitive damages should be denied because the conduct alleged in the First Amended Complaint does not justify such an award.

15.     Plaintiff's request for punitive damages under Title VII and § 1983 against the City of Wilmington should be denied because, as a municipal corporation, the City is not subject to such an award.  *See* 42 U.S.C. § 1981a(b)(1).

16.     Plaintiff's § 1983 claims should be dismissed because no state action occurred.

17.    Plaintiff's Title VII and § 1983 claims are barred against the City because the City took reasonable care to prevent acts of discrimination, retaliation or sexual harassment, including the adoption of policies and providing training to all of its employees.

18.    Plaintiff failed to take advantage of any corrective and/or preventative opportunities made available by the City with regard to any alleged act of discrimination and/or retaliation.

19.    None of the allegations set forth in Plaintiff's First Amended Complaint constitutes a "materially adverse change" in employment.

20.    None of the allegations set forth in Plaintiff's First Amended Complaint constitutes a "tangible employment action."

21.    The City of Wilmington's remedial actions insulate it from liability because they were reasonably calculated to prevent further discrimination or harassment, if any.

22.    Defendants reserve the right to add, amend, clarify or modify its defenses and answers to conform to such facts as may be revealed through discovery or otherwise.

DATED:    August 20, 2007    **CITY OF WILMINGTON**

/s/ Gary W. Lipkin
Gary W. Lipkin (Bar I.D. No. 4044)
Assistant City Solicitor
City/County Building
800 N. French Street
Wilmington, DE 19801
302.576.2187

Attorney for Defendants
City of Wilmington
and Kenneth Bukowski

10

# EXHIBIT 4

**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION PROGRAM**

Charging Party:
Elizabeth Taylor
615 South Union Street
Wilmington, DE 19805

State Case No. 06060269W

vs.

Respondent:
City of Wilmington
300 North Walnut Street
Wilmington, DE 19801

**FINAL DETERMINATION AND RIGHT TO SUE NOTICE**

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

***Reasonable Cause Determination and Notice of Mandatory Conciliation.***

In this case, the Department has completed its investigation and found that there is reasonable cause to believe that an unlawful employment practice has occurred. Under the provisions of the law, the parties are now required to engage in mandatory conciliation with Ms. Susan C. Holmes. Please be prepared to appear for conciliation on the following date and time: February 15, 2007 at 2:00 P.M. at the Delaware Department of Labor, Division of Industrial Affairs, Third Floor, 4425 North Market Street, Wilmington, DE 19802.

Your cooperation and good faith effort are anticipated. Your corresponding Delaware Right to Sue Notice will be effective one day after your compliance with the conciliation effort.

The reasonable cause finding is based primarily on the following facts: Charging Party alleges discrimination based on her sex/gender (female) when her supervisor LT Kenneth Bukowski sexually harassed her. She also alleges that he harassed her in a non-sexual manner by subjecting her, on a daily basis, to verbal abuse and ridicule. Charging Party states that the treatment accorded to her was different from the manner in which LT Bukowski treated male firefighters. Charging Party avers that she complained of this treatment to superior officers, but nothing was done to remedy the harassment. Respondent denied that LT Bukowski harassed Charging Party, either sexually or non-sexually. Charging Party failed to meet her burden to prove, by a preponderance of evidence, that she was sexually harassed. The testimony of Charging Party's witnesses supports Charging Party's claim of non-sexual harassment. Although Respondent provided documents and Affidavits/Statements to support its position, much of the evidence was irrelevant to the issues and timeframe of Charging Party's complaint. Based on all of the evidence provided during this investigation, Charging Party met her burden to prove, by a preponderance of evidence, that she was discriminated against, based on her sex/gender.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Program. See the attached Notice of Rights.

| | |
|---|---|
| 1/23/07 | *For JKC,* ___ *Silvison* |
| Date issued | Julie Klein Cutler, Administrator |
| | |
| Date conciliation completed | Julie Klein Cutler, Administrator |

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*
DOL Form C-12RC : 01/06